**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **EMERSON ELECTRIC CO.,** | ) | |
| a Missouri corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. _____ |
| v. | ) | |
| | ) | <u>Jury Trial Requested</u> |
| **EMERSON QUIET KOOL CO. LTD., and** | ) | |
| **HOME EASY LTD.,** | ) | |
| Delaware corporations, | ) | |
| | ) | |
| Defendants. | ) | |

### <u>COMPLAINT</u>

Plaintiff, Emerson Electric Co., for its Complaint against Defendants, Emerson Quiet Kool Co. Ltd. and Home Easy Ltd., alleges the following:

### <u>PARTIES</u>

1.     Plaintiff Emerson Electric Co. ("Emerson Electric" or "Plaintiff") is a Missouri corporation with its principal place of business at 8000 West Florissant Avenue, St. Louis, Missouri 63136.

2.     Upon information and belief Defendants Emerson Quiet Kool Co. Ltd., also known as Emerson Quiet Kool Co. Ltd. LLC, ("Emerson Quiet Kool" or "Defendant") and Home Easy Ltd. ("Home Easy" or "Defendant") are both Delaware corporations having a principal place of business at 1275 Bloomfield Avenue, Unit 141, Building 16, Fairfield, New Jersey 07004.

## JURISDICTION AND VENUE

3.     This is an action for: Trademark Infringement, Unfair Competition and Trademark Dilution under the Lanham Act, 15 U.S.C. §1052, *et seq.*; Breach of Contract under Missouri Common Law; Trademark Dilution under the Missouri Annotated Statute §417.061; and Unfair Competition under Missouri Common Law.

4.     This Court has jurisdiction over the claims made in this Complaint under the Lanham Act, 15 U.S.C. §1121, and under the Judicial Code of the United States, 28 U.S.C. §1331, §1332 and §1338. Jurisdiction is also provided under 28 U.S.C. §1367(a). Venue is conferred in accordance with 28 U.S.C. §1391.  A substantial part of the events or omissions giving rise to the claims occurred in this judicial district. Defendants have caused products infringing Emerson Electric's EMERSON trademarks to be advertised, promoted and/or sold in this judicial district.

## NATURE OF ACTION

5.     Emerson Electric seeks to prevent and restrain Defendants' unauthorized and infringing misappropriation of Emerson Electric's well-known and distinctive EMERSON trademarks.  For over 127 years, Emerson Electric has continuously used the EMERSON trademarks in connection with a wide range of products, including, without limitation, products that play a significant role in the temperature, humidity level and overall comfort of the home and related goods and services.  Defendants, seeking to trade on the established goodwill of Emerson Electric, recently began selling and marketing air conditioning products and dehumidifying products under the trademark EMERSON QUIET KOOL.  Defendants' transparent effort to trade on Emerson Electric's goodwill is further

2

demonstrated by their use of the EMERSON mark prominently and in the color blue, which color is and has been Emerson Electric's corporate color for decades:

**Defendants' Mark**          **Plaintiff's Mark**



6.      To prevent consumer confusion and deception and Defendants' willful misappropriation of Emerson Electric's goodwill, Emerson Electric asserts claims for: Trademark infringement pursuant to Section 32 of the Lanham Act (15 U.S.C. § 1114); Trademark infringement, unfair competition and false designation of origin, pursuant to Section 43(a)(1)(A) of the Lanham Act (15 U.S.C. § 1125(a)(1)(A)); Cybersquatting under Section 43(d) of the Lanham Act (15 U.S.C. § 1125(d)); and related claims of trademark infringement, dilution, false designation of origin and unfair competition under the statutory and common law of Missouri (Missouri Annotated Statute Section 417.061).   Emerson Electric also asserts claims for breach of contract and the cancellation of United States Trademark Registration Number 4,688,893.   Emerson Electric seeks injunctive relief to prevent Defendants from further misappropriating Emerson Electric's goodwill and infringing its EMERSON trademarks, and further seeks damages, attorneys' fees and other monetary relief.

## GENERAL ALLEGATIONS

**The EMERSON Marks**

7.      Since at least as early as 1890, Emerson Electric has continuously used and promoted the trademark EMERSON in interstate commerce in connection with a wide variety of goods and services, including, by way of example and not by way of

3

limitation, products that play a significant role in the temperature, humidity level and overall comfort of the home, such as air circulators, fans, air conditioning compressors, HVAC controls, humidifiers, humidifying products and thermostats (collectively the "Emerson Electric Goods").

8.      Since at least as early as 1890, Emerson Electric, by and through its related companies and affiliates, has continuously used marks consisting of and comprising EMERSON (the "EMERSON Marks") in connection with the Emerson Electric Goods.

9.      Emerson Electric has invested significant time, resources, and effort promoting the EMERSON Marks and the products and services offered thereunder. The EMERSON Marks have become renowned and are valuable symbols that identify Emerson Electric as the source of high-quality products and services.

10.     In addition to its common law rights in the EMERSON Marks by virtue of use, Emerson Electric owns numerous federal trademark registrations on the Principal Register of the United States Patent and Trademark Office for the EMERSON Marks, including the following:

| Mark | Registration No. | Registration Date | Classes/Goods |
|---|---|---|---|
| EMERSON | 3,757,850 | March 9, 2010 | **(6):** Metal shelves;[ sheaves;] metal brackets; metal tool boxes;[ metal hardware, namely, pulleys] <br> **(7):** [Machine parts, namely, bearings, bearing seals, pillow blocks, flange blocks, takeup units, bushings, belts, couplings, pulleys, motor bases, compressors, clutches, mechanical seals, starters, electric motors and induction motors;] food waste disposers, garbage disposals; ultrasonic cleaning, welding, and joining machines; industrial vacuum cleaning machines; electric generators; power operated pipe threading machines; ultrasonic cleaning machines <br> **(8):** Metal vises; a full line of manually operated |

| | | | hand tools for industrial, commercial and domestic use and replacement parts therefor and accessories and attachments therefor, namely, drive shafts, support arms, cleaning brushes, screwdrivers, wrenches, hammers, saws, pliers, wire crimpers, bolt cutters, anvils, hand saws, punch and die sets comprising punches, dies and case, tubing cutters, cable cutters, wire strippers, conduit sizing tools and flaring tools; swaging tools for shaping pipes, rods, conduits and tubing; benders for use on conduits and tubing; expanders for use on pipes, rods, conduits and tubing; and inner core cables **(10):** Ultrasonic cleaners for medical and surgical instruments[; wheeled transports in the nature of carts] **(12):** Wheeled transports in the nature of carts **(16):** Printed training manuals featuring information on shelving and storing products, and kitchen, food service and household organizing products **(20):** Storage and organization products, namely, storage racks, shelving, baskets, hampers, bins, boot and shoe organizers, wardrobes, cabinets, uninsulated holding cabinets; storage towers, drawers and mounting hardware for use therewith sold as a unit; cabinets and organizers therefor; non-metal shelving systems comprised primarily of boot and shoe organizers, wardrobes, storage cabinets, storage towers, racks, shelving, hampers, drawers, bins, non-metal shelves; workbenches; office furniture; kitchen, food service and household organizing products, namely, pan and rack trays; and dish storage shelving **(35):** Business services, namely, facilities management of technical operations **(36):** Providing educational scholarships; financial sponsorship of entertainment and cultural events, namely, artistic performances, musical performances, theatrical performances, historical exhibits and historical societies, sporting events, film festivals, speaking engagements and community service programs in support of education and scholarship services, health and human services, civic and community welfare, and youth-oriented education and entertainment **(37):** Repair and maintenance of industrial and commercial machinery and electronic equipment **(41):** Training in the use of heating, ventilating, air conditioning and refrigeration technologies and systems |
|---|---|---|---|

| | 3,771,945 | April 6, 2010 | **(9):** [Environmental measuring, testing and monitoring instruments, namely, particle counters;] scientific measuring, signaling, checking and supervision instruments and equipment for predicting and detecting failures in high priority equipment and for monitoring the state of machines and detecting bearing faults, namely, software for historization, accessing, trending, identification and communication of data, digital buses, transmitters, algorithms, sensors, transducers, fieldbus transmitters; electrical power supplies; thermostats; computer software for industrial automation; computer software for data management, analysis and reporting for use in industrial automation, [network power,] process management and climate technologies applications; computer software for rotating machinery and process instrumentation; computer software for collecting, analyzing, sharing and utilizing customer information; project, plant and facility management software, namely, regulatory compliance software, software for sensing and reporting process and equipment abnormalities, batch application software, predictive maintenance software, software for configuring, commissioning and communicating measurements and calculated values and for providing access to diagnostic messages and historical data, software for exchanging process-related information between various software-based applications, software for monitoring equipment conditions, software for providing access to instrument and valve process information, diagnostic status information and documentation of device maintenance information, predictive diagnostic software, calibration management software, device configuration software, equipment monitoring, data management and data analysis software; computer software for determining product configuration and for product configuration optimizing; computer software for predicting and trending equipment maintenance; software for maximizing performance, reducing heat rates, reducing steam waste, stabilizing steam temperature control, optimizing soot blowing, and optimizing capacity and minimizing emissions in boilers, soot blowers and furnaces; plant facility and automation software for identifying controllable energy losses, for reducing plant maintenance costs, for reducing unplanned outages and optimizing the distribution of load demands; condensers and condensing units; computer hardware and software for use in monitoring |
| EMERSON | | | |

| | | | |
|---|---|---|---|
| | | | gas flow; gas analyzers; electrical power supplies; diagnostic and analytical equipment, namely, pressure temperature, level and flow measurement machines, liquid analyzers; power amplifiers excluding amplifiers for use with consumer audio equipment; apparatuses for use in measuring the density of liquids and substances, flowmeters, controllers, electronic batch controllers; remote controls for operating equipment and machinery excluding remote controls for operating consumer electronic devices; voltage regulators; pressure regulators for commercial and agricultural use; voltage regulators for electric power; voltage surge suppressors; temperature sensors for electric motors appliances, namely, stoves, grills, ovens, ranges, refrigerators, water heaters, dishwashers, HVAC, washers and dryers, power tools, [automotive, marine and recreational vehicles, controlling refrigerant loss; communication subsystems comprised primarily of circuit breaker panels;] power conditioning equipment, namely, [uninterruptible power supplies,] voltage regulators, transformers, surge suppression devices and power supplies; [power distribution systems comprised primarily of distribution panels; electric transfer switches; surge suppressors; chargers for industrial, commercial and military use; electrical chargers for power tools and hand tools excluding consumer yard and garden tools intended for use in the yard or garden of a personal residence] |
| **EMERSON** | 3,861,152 | October 12, 2010 | (11): Humidifiers |
| **EMERSON** | 3,861,153 | October 12, 2010 | (11): household air cleaners; air purifying units for domestic, commercial and industrial use; ceiling fans; air circulators |
| **EMERSON** | 3,744,986 | February 2, 2010 | (11): Thermostatic valves; hot water heaters and dispensers |
| EMERSON | 1,717,861 | September 22, 1992 | (11): water purifying units; [electric bath heaters for commercial, laboratory and industrial use; air blast heaters for commercial and industrial use; blower type electric heaters;] electric water boilers; [gas and electric burners;] ceiling fans; [fluorescent lighting fixtures and parts therefor for commercial and industrial use;] [electric circulation heaters; electric lighting fixtures for commercial and industrial use; drum heaters; electric air heaters for commercial and industrial use or for permanent attachment to building structures; convection heaters for commercial and industrial use; sheathed heating elements; |

| | | | |
|---|---|---|---|
| | | | cylinder heaters for commercial and industrial use; food table heaters for commercial and industrial use; industrial screw plug immersion heaters; electric space heaters for commercial and industrial use; portable electric fans; industrial fans used for ventilation and exhaust purposes; electric hot air furnaces; electric hot plates for commercial, laboratory and industrial use; electric immersion heaters for commercial, laboratory and industrial use, and, in residential use, permanently attached to plumbing;] [evaporative coolers;] [residential electric exhaust fans]; valves for [plumbing and] heating systems; [air, gas and water filtering units for industrial use; finned duct type air heaters and open-coil electric heating elements used in duct heaters; steam heat accumulators;] electric water heaters and electric non-coin operated hot water dispensers permanently attached to plumbing;[humidifiers for central heating systems;] [ infra-red heaters for commercial and industrial use; electric furnaces; central air conditioning and heating units; electric heaters for industrial furnaces; electric ovens for commercial, industrial and laboratory use;] [radiant heaters for commercial, laboratory and industrial use;] [ radiant heaters for commercial, laboratory and industrial use; electric steam boilers and generators; steam superheaters; strip, ring, disc, tubular, cartridge and clamp-on heaters; stud and bolt heaters; track switch heaters; water taps;] gas burner igniters [; bubblers (valves and nozzles for drinking fountains); electric coffee urn elements; electric industrial nozzle heating elements, and filter-driers for use in refrigerant lines] |
| EMERSON | 1,795,612 | September 28, 1993 | **(7):** compressors for use in refrigeration, heating, ventilation, and air conditioning; [ dishwashers; washing machines for use in laundries; electrically powered finishing mills for deburring, flash removal, edge-breaking, rough or smooth surface preparation, radiusing, precision surface reduction, descaling, burnishing, and chemical treating; ] and valves for fluid control being parts of machines |
| **EMERSON** | 0,111,931 | August 15, 1916 | **(21):** [Electric Motors,] Electric Fans, including fans of [Portable,] wall, * and * ceiling [,and Floor] Types, [Electric Exhaust-Fans,][Electric Forge-Blowers,] [Electric Generators, Electric Motor-Generators,] [Knife-Switches,] [Switchboards, Panel-Boards,] [Fuse-Boards,] [Transformers, Rotary Transformers,] [Illuminating-Cylinders, Watch-Demagnetizers, Electric Organ-Blowers, Electric Hair-Driers, Electrically-Operated Coffee-Mills,] [Electrically-Operated] [Air and] [Water Pumps, Electrically- |

| | | | Operated Lathes,] [Electrically-Operated Buffers and] [Grinders, Electrically-Operated Furnace-Blowers] [, Electrically-Operated Hacksaws, and Electric Motors and Power-Transmitters for Sewing-Machines] |
| --- | --- | --- | --- |
| **EMERSON** | 1,815,785 | January 11, 1994 | **(11):** fans; namely, [portable electric fans, wall-mounted fans, exhaust fans,] ceiling fans [, whole house fans, and fan motors therefor; and humidifiers] |

Each of the above-listed registrations is valid and subsisting and each is incontestable pursuant to 15 U.S.C. Sections 1065 and 1115(b).  The registrations are prima facie evidence of the registration of the marks, the validity of the registered marks, Emerson Electric's ownership of the marks and its exclusive right to use the registered marks in commerce in connection with the goods and services specified.

11.     The EMERSON Marks are distinctive and widely recognized by the public and have become famous, as that term is used in 15 U.S.C. § 1125(c)(1).

12.     A true and correct copy of the registration certificate for each of the above-listed trademark registrations and a true and correct copy of the United States Patent and Trademark Office's status record, including available data regarding any assignments, is attached hereto as Exhibit A.

13.     Defendants had, at minimum, constructive notice at all relevant times of Emerson Electric's ownership and other rights in the registrations pursuant to 15 U.S.C. § 1072.

**Emerson Electric's Background**

14.     Emerson Electric has traded on the New York Stock Exchange since 1938 under the symbol EMR. *See:* Exhibit B.

15.     Plaintiff's sales in Fiscal Year 2016 were $14.5 billion.  *See:* Exhibit B.

16.    Emerson Electric is ranked number 139 on the 2017 *Fortune* 500 list of America's largest corporations, as ranked by revenues.  *See:* Exhibit C.

17.    In 2016 Emerson Electric was named to the Clarivate Analytics, formerly Thomson Reuters, Top 100 Global Innovators list for the sixth consecutive year.  *See:* Exhibit D.

18.    Emerson Electric's wholly-owned subsidiary, Emerson Climate Technologies, Inc., is the world's leading provider of heating, ventilation, air conditioning and refrigeration solutions for residential, industrial and commercial applications. Emerson Climate Technologies, Inc.'s air conditioning compressor, thermostat and control products are frequently recognized for excellence, including for numerous Dealer Design Awards sponsored by The Air Conditioning Heating & Refrigeration News Magazine.

19.    Emerson Climate Technologies, Inc.'s air conditioner compressors were honored as the 2014 AHR Expo Product of the Year from among thousands of products. The Emerson product was the winner in the "Cooling" category.  *See:* Exhibit E.

20.    As a direct result of Emerson Electric's substantial sales, significant advertising and marketing efforts, and accolades awarded to it over the last 127 years, the EMERSON Marks have engendered consumer loyalty and valuable goodwill.  The public has resultantly come to recognize the EMERSON Marks as exclusively identifying Emerson Electric as the source of high-quality HVAC solutions.

**Defendants' Wrongful Acts**

21.    Upon information and belief, Defendant Home Easy's parent company is Home Easy Industrial Co., Ltd. of Hong Kong ("Home Easy HK"), which acquired Defendant Emerson Quiet Kool in 2016.

22.    Upon information and belief, Defendant Emerson Quiet Kool is a provider of window and wall room air conditioning units and dehumidifiers (the "Emerson Quiet Kool Goods").

23.    Upon information and belief, Defendants Home Easy and Emerson Quiet Kool operate together or in concert from the same New Jersey address. Specifically, Home Easy established its headquarters at the Fairfield, New Jersey address, Home Easy HK reports the same New Jersey address as its "USA Office", and Emerson Quiet Kool established its headquarters at the same address. Exterior signage for both Home Easy and Emerson Quiet Kool appears on the building at the Unit 141 address shared by Emerson Quiet Kool and Home Easy in Fairfield, New Jersey:



24.    On information and belief, Home Easy also provides the warranty services for the Emerson Quiet Kool Goods as follows: "Should your EMERSON QUIET KOOL

brand Window Air Conditioner prove to be defective in material or workmanship under normal use during the warranty period listed below, effective from the date of original consumer purchase of the product, Home Easy Ltd. will replace defective part(s)."

25.     On information and belief, in engaging in the conduct alleged throughout this Complaint, each of the Defendants was the agent, principal, employee, servant, employer, successor, alter ego, joint venturer, partner and/or co-conspirator of each other Defendant in this action.

26.     On information and belief, each of the Defendants was, at all relevant times mentioned herein, acting within the course and scope of such capacities and with the consent of the remaining Defendants.

27.     Wherever reference is made herein to an act of one of the Defendants, such allegation means the acts of such Defendant and each of the other Defendants, acting individually, jointly and severally.

28.     Upon information and belief, Emerson Quiet Kool provides dehumidifiers and air conditioning products under the mark EMERSON QUIET KOOL.

29.     The Emerson Quiet Kool Goods prominently bear the EMERSON QUIET KOOL mark in blue and in the following stylized form where the EMERSON term is far more prominent than the QUIET KOOL terms:



30.     Upon information and belief, the Emerson Quiet Kool Goods launched under the EMERSON QUIET KOOL mark in or about May 2017.

31.     The Emerson Quiet Kool Goods are promoted via the website associated with the domain <emersonquietkool.com>.  The Emerson Quiet Kool Goods are, upon

information and belief, offered for sale via big box and online retailers, including Home Depot, Wal-Mart, Amazon.com and Wayfair.com.

32.     Emerson Quiet Kool purports to own a United States trademark registration, U.S. Registration No. 4,688,893, for the word mark EMERSON QUIET KOOL for "Portable compact residential window and wall room air conditioning units," in International Class 11 (the "'893 Registration").   The application underlying this contestable registration was filed on March 1, 2010, on an intent to use basis under Section 1(b) of the Lanham Act, 15 U.S.C. 1051(b), by Airwell Hong Kong Technologies Ltd. ("Airwell").  The application proceeded to registration on February 17, 2015, and the registration claims November 5, 2014 as the date of first use and date of first use in commerce of the mark.

33.     Upon information and belief, Emerson Quiet Kool purportedly became the owner of the '893 Registration in January 2017, through a series of assignments.

34.     Plaintiff has a long history of skirmishes with Defendants' alleged predecessors in interest, one of which resulted in this Court's enjoining the use of marks that contain EMERSON in connection with kerosene space heaters and enjoining the defendants there from representing that any product made, offered for sale, sold or distributed by them, is authorized, sponsored or endorsed by, or otherwise connected with, Emerson Electric.  *Emerson Electric Co. v. Emerson Quiet Kool Corp.,* 577 F.Supp. 668 (E.D. Mo. 1983).

35.     Emerson Electric filed a Letter of Protest with the USPTO Office of the Commissioner for Trademarks, objecting to the registration of the application underlying the '893 Registration (the "Underlying Application").  Airwell had misrepresented to the

USPTO that Airwell and Emerson Electric were parties to an agreement under which each consented to each other's use and registration of their respective EMERSON QUIET KOOL and EMERSON marks.  The agreement is dated August 21, 2009 and is attached as Exhibit F.  The agreement, however, is not a mutual consent.  Nowhere in the agreement does Emerson Electric provide Airwell with any consent. Nor is that agreement even colorably ambiguous on the issue of mutuality.  The USPTO agreed and resultantly withdrew the Underlying Application from publication and reinstated its prior refusal premised on likelihood of confusion with Emerson Electric registrations for marks consisting of or comprising EMERSON.

36.     Emerson Electric and Airwell subsequently entered into the consent agreement attached as Exhibit G (the "Consent Agreement") by which Emerson Electric consented to Airwell's use and registration of EMERSON QUIET KOOL in connection with narrowly-defined goods, namely "portable compact residential window and wall room air conditioning units."

37.     Upon information and belief, the EMERSON QUIET KOOL mark was not in use in commerce as of the claimed date of first use of November 5, 2014, or even by the date the mark registered in February 2015.  Upon information and belief, the actual date of first use in commerce of the mark shown in the '893 Registration was not until May 2017.  Upon information and belief, the Emerson Quiet Kool brand was inactive for many consecutive years preceding Emerson Quiet Kool's 2017 launch.

38.     Defendant Home Easy is not a party to the Consent Agreement and does not have successive or other rights thereunder.

39.     Defendant Emerson Quiet Kool is not a party to the Consent Agreement and does not have successive or other rights thereunder.

40.     In any event, the abandonment of the EMERSON QUIET KOOL mark voids the Consent Agreement.

41.     Even if the EMERSON QUIET KOOL mark had not been abandoned, and even if Defendants can claim the benefit of the Consent Agreement, Defendants are in breach for promoting their products in a way that leads consumers to associate Defendants with Emerson Electric or its goods and/or services.

42.     Even if the EMERSON QUIET KOOL mark had not been abandoned, and even if Defendants can claim the benefit of the Consent Agreement, Defendants are in breach for using the EMERSON QUIET KOOL mark in connection with products other than portable compact residential window and wall room air conditioning units.

**<u>Defendants' Wrongful Conduct Has Caused Emerson Electric Harm and Risks Future Harm</u>**

43.     Actual confusion as to the source of the EMERSON QUIET KOOL products has already occurred.  Emerson Quiet Kool consumers have mistakenly contacted Emerson Radio Corporation, a separate entity that owns rights in its own EMERSON mark for specific goods and services and with whom Emerson Electric has long-standing agreements about the use of their respective marks.  Emerson Radio Corporation, in turn, directed an unknown number of early consumer complaints relating to EMERSON QUIET KOOL product to Emerson Electric, believing that the products were those of Emerson Electric.

44.     Defendants' own retailers are confused.  The https://www.hayneedle.com webpages from which Emerson Quiet Kool Goods are available for purchase, picture

15

Plaintiff's EMERSON house mark prominently, followed by a discussion of Plaintiff and its history and a hyperlink to genuine Plaintiff product offered on the site, as follows:

https://www.hayneedle.com/product/soleusemersonquietkooldehumidifier.cfm



The webpage is attached as Exhibit H.

45.    Defendants' actions have created confusion in the marketplace as consumers and other industry stakeholders are associating the Emerson Quiet Kool Goods with Emerson Electric.  This confusion has harmed, and will continue to harm, Emerson Electric's goodwill in the EMERSON Marks and its business reputation.

46.    The confusion between Emerson Quiet Kool and Emerson Electric is ongoing and continuing, compounding the harm to Emerson Electric.

**Defendants Refuse to Cease Their Harmful Conduct**

47.    After discovering Defendants' wrongful conduct, including through the reported incidents of actual consumer confusion, Emerson Electric moved promptly to attempt to minimize its damage.

48.    After sufficient investigation, Emerson Electric sent a cease and desist letter to Emerson Quiet Kool on July 10, 2017 demanding that Emerson Quiet Kool stop its infringing use of the EMERSON QUIET KOOL mark by July 18, 2017.

16

49.     The time allotted for Emerson Quiet Kool to respond to Emerson Electric's cease and desist letter elapsed with no response or change in conduct.

50.     Defendants' use of the EMERSON Marks and other wrongful conduct as described in this Complaint constitute infringement of the EMERSON Marks, unfair competition, false designation of origin and trademark dilution. As a result of Defendants' wrongful conduct, Emerson Electric has suffered irreparable damage to its goodwill and business reputation, and will continue to suffer such damage, unless Defendants' conduct is restrained.  None of these harms are adequately compensable by monetary damages.

### COUNT I
### TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

51.     Emerson Electric repeats and realleges the allegations made above.

52.     Defendants' use of the EMERSON Marks, without the authorization or consent of Emerson Electric in connection with the sale, offering for sale, and distribution of the Emerson Quiet Kool Goods, constitutes use in interstate commerce that is likely to cause confusion, deception and mistake by purchasers and the consuming public.

53.     As a result of Defendants' acts, the purchasing public is likely to believe that the Emerson Quiet Kool Goods are authentic Emerson Electric Goods, that Defendants are authorized by Emerson Electric to sell Emerson Electric Goods, that consumers are purchasing Emerson Electric Goods when they are actually purchasing Emerson Quiet Kool Goods, and/or that Defendants and the Emerson Quiet Kool Goods are otherwise affiliated with, or sponsored by, Emerson Electric.

17

54.     Defendants' acts constitute trademark infringement under 15 U.S.C. § 1114.

55.     In fact, instances of actual confusion have occurred.

56.     Upon information and belief, Defendants have acted intentionally, maliciously, willfully, and in bad faith.

57.     Defendants' acts have caused and, if allowed to continue, will continue to cause Emerson Electric to suffer substantial irreparable harm for which Emerson Electric has no adequate remedy at law.   Emerson Electric is entitled to an award of damages and injunctive relief in under 15 U.S.C. § 1116.

58.     Emerson Electric has suffered actual damages and Defendants have been unjustly enriched.

59.     Defendants' actions have been extraordinary, willful, and in bad faith, entitling Emerson Electric to treble damages, attorneys' fees and costs of suit under 15 U.S.C. §§ 1117(a) and (b), and to such other and further relief as the Court shall deem appropriate in the circumstances.

**COUNT II**
**TRADEMARK INFRINGEMENT, UNFAIR COMPETITION**
**AND FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a)(1)(A)**

60.     Emerson Electric repeats and realleges the allegations made above.

61.     Defendants' unauthorized use of the EMERSON Marks on and in connection with air conditioning and dehumidifier products constitutes use in interstate commerce that is likely to cause confusion, or to cause mistake, or to deceive consumers as to the affiliation, connection, or association of the Emerson Quiet Kool Goods, such that consumers may believe that Defendants' products are sponsored by,

18

endorsed by, approved by, licensed by, authorized by, or affiliated or connected with, Emerson Electric.

62.     Defendants' acts constitute trademark infringement, false designation of origin, and unfair competition in violation of Lanham Act § 43(a)(1)(A), 15 U.S.C. § 1125(a)(1)(A).

63.     Upon information and belief, Defendants' acts have been committed intentionally, maliciously, and willfully for the purposes of deceiving buyers into purchasing the Emerson Quiet Kool Goods, falsely believing that such products emanate from, or are affiliated with, Emerson Electric, and with the specific intent to appropriate to Defendants and to employ for their own benefit, the valuable goodwill and business reputation represented by the EMERSON Marks.

64.     Defendants' acts have caused and, if allowed to continue, will continue to cause Emerson Electric to suffer substantial irreparable harm for which Emerson Electric has no adequate remedy at law.

65.     In addition, as a result of the foregoing, Emerson Electric has suffered actual damages and Defendants have been unjustly enriched.

66.     Defendants' actions have been extraordinary, entitling Emerson Electric to treble damages, attorneys' fees and costs of suit, pursuant to 15 U.S.C. § 1117(a) and (b), and to such other and further relief as the Court shall deem appropriate in the circumstances.

## COUNT III
## FEDERAL TRADEMARK DILUTION UNDER 15 U.S.C. § 1125(c)

67.     Emerson Electric repeats and realleges the allegations made above.

68.     The Emerson Marks are a collection of distinctive marks that have been in use for many years and have achieved widespread public recognition.

69.     The EMERSON Marks are famous within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

70.     Defendants' acts were commenced and committed from a time after the EMERSON Marks became famous.

71.     The EMERSON Marks are distinctive marks that have been in use for many years and play a prominent role in Emerson Electric's marketing, advertising and the popularity of its products and services across many different media.

72.     Consumers are likely to locate and purchase Defendants' products in the erroneous belief that Defendants are associated with, sponsored by, or affiliated with, Emerson Electric, and/or that Emerson Electric is the source of those products.

73.     Defendants' acts dilute and/or are likely to dilute the distinctive quality of the EMERSON Marks and to lessen the capacity of such marks to identify and distinguish Emerson Electric as the source of the products.

74.     Defendants' unlawful use of the EMERSON Marks in connection with inferior goods is also likely to tarnish the EMERSON Marks and cause blurring in the minds of consumers between Emerson Electric and Defendants, thereby lessening the value of the EMERSON Marks as unique identifiers of Emerson Electric products and services.

75.     Defendants' acts have caused and will continue to cause irreparable injury to Emerson Electric.  Emerson Electric has no adequate remedy at law and is damaged in an amount yet to be determined.

## COUNT IV
## VIOLATION OF THE ANTICYBERSQUATTING
## CONSUMER PROTECTION ACT, 15 U.S.C. § 1125(d)

76.     Emerson Electric repeats and realleges the allegations made above.

77.     Defendants are using the domain name <emersonquietkool.com> (the "Infringing Domain Name") to market air conditioning and dehumidifier products.

78.     The Infringing Domain Name expressly contains Emerson Electric's EMERSON trademark and is, therefore, confusingly similar to the EMERSON Marks.

79.     The EMERSON Marks are distinctive, and had achieved secondary meaning before Defendants, or their agent, registered the Infringing Domain Name in 2013.

80.     The use of such a domain name infringes the EMERSON Marks.

81.     Upon information and belief, Defendants registered the Infringing Domain Name with the bad faith intent to profit from the goodwill Emerson Electric has developed in the EMERSON Marks.

82.     Upon information and belief, Defendants registered and are using a domain name that is confusingly similar to Emerson Electric's name and to the EMERSON Marks to capitalize on Emerson Electric's goodwill and reputation.

83.     Defendants' use of the <emersonquietkool.com> domain creates likely and actual confusion as to the source, sponsorship, affiliation or endorsement of Defendants' site and has harmed Emerson Electric's goodwill.

84.     Defendants' conduct has caused and will continue to cause injury to Emerson Electric and to its goodwill and reputation, and will continue to damage both

Emerson Electric and the public unless enjoined by this Court and the domain name registration ordered canceled or transferred to Emerson Electric.

85.     Defendants' aforesaid acts have caused and will cause irreparable injury to Emerson Electric. Unless such acts are restrained by this Court, Defendants' wrongful conduct will continue, and Emerson Electric will continue to suffer such injury.

86.     As a result of the foregoing actions, Emerson Electric is entitled to have Emerson Quiet Kool temporarily, preliminarily and permanently restrained from using, selling or otherwise transferring the Infringing Domain Name, and to monetary compensation and statutory penalties.

## COUNT V
## DILUTION UNDER MISSOURI ANNOTATED STATUTE § 417.061

87.     Emerson Electric repeats and realleges the allegations made above.

88.     Defendants' unauthorized use of the EMERSON Marks is likely to damage Emerson Electric's business and dilutes the distinctive quality of the EMERSON Marks in violation of R.S.Mo. § 417.061.

89.     Emerson Electric has been and will continue to be irreparably harmed and damaged. Emerson Electric's remedies at law are inadequate to compensate for this harm and damage. Based on Defendants' unauthorized use of the EMERSON Marks, Emerson Electric is entitled to injunctive relief pursuant to R.S.Mo. §§ 417.061.

## COUNT VI
## UNFAIR COMPETITION–MISSOURI COMMON LAW

90.     Emerson Electric repeats and realleges the allegations made above.

22

91.     Defendants' use of the EMERSON Marks is likely to cause confusion, mistake or deception as to the source, origin, sponsorship or approval of the products Defendants' sell in that consumers and others are likely to incorrectly believe Emerson Electric authorizes or controls the sale of those products or that Defendants are associated with or related to Emerson Electric.

92.     Defendants' use of EMERSON QUIET KOOL infringes the EMERSON Marks.

93.     Defendants' use of the EMERSON Marks is a deliberate, intentional and willful attempt to injure Emerson Electric's business, to trade on Emerson Electric's good will and to confuse and deceive consumers.

94. Defendants' acts constitute unfair competition under the Common Law of the State of Missouri.

95.     Emerson Electric resultantly has been and will continue to be irreparably harmed and damaged. Emerson Electric's remedies at law are inadequate to compensate for this harm and damage.

## COUNT VII
## BREACH OF CONTRACT

96.     Emerson Electric repeats and realleges the allegations made above.

97.     The Consent Agreement, Exhibit G, manifests the express terms and conditions entered into between Emerson Electric and Airwell concerning Airwell's use and registration of EMERSON QUIET KOOL.

98.     Emerson Electric has fully complied with its obligations under the Consent Agreement.

23

99.     Defendants are not parties to the Consent Agreement and do not have successive or other rights thereunder.

100.    Defendants did not ratify the provisions of the Consent Agreement and did not expressly agree to be bound by its terms.

101.    The abandonment of the EMERSON QUIET KOOL mark voids the Consent Agreement.

102.    In the alternative, Defendants have violated and are continuing to violate the Consent Agreement by promoting their products in a way that leads consumers to associate Defendants with Emerson Electric or its goods and/or services in contravention of Paragraph 6, and by using the EMERSON QUIET KOOL mark in connection with products other than portable compact residential window and wall room air conditioning units.

103.    As a result of Defendants' breach of the Consent Agreement, Emerson Electric has suffered and will continue to suffer irreparable injury and damage.

104.    Emerson Electric is entitled to all measure of breach of contract damages, including restitution and incidental damages.

**COUNT VIII**
**CANCELLATION OF REGISTRATION NO. 4,688,893**

105.    Emerson Electric repeats and realleges the allegations made above.

106.    Emerson Electric requests an Order directing the Commissioner of Trademarks to cancel United States Trademark Registration No. 4,688,893 pursuant to Section 37 of the Lanham Act (15 U.S.C. § 1119).

107.   The mark of the '893 Registration has been abandoned due to nonuse with intent not to resume use.

108.   The mark of the '893 Registration was not in bona fide use in commerce in connection with the identified goods as of the filing date of the Statement of Use.

109.   Emerson Electric has priority based on its valid and subsisting prior registrations for the EMERSON Marks.   Additionally, Emerson Electric has priority based on prior use of the EMERSON Marks in commerce in connection with the Emerson Electric Goods.   Plaintiff's EMERSON Marks were used in commerce in connection with the Emerson Electric Goods before the filing date of the Underlying Application of the '893 Registration and before the '893 Registration's claimed first use date of November 5, 2014.

110.   The goods of the '893 Registration are products that are identical or related to the Emerson Electric Goods advertised, promoted, offered, and/or sold in connection with the EMERSON Marks.

111.   The challenged EMERSON QUIET KOOL mark so resembles Emerson Electric's prior used and registered EMERSON Marks as to be likely, when used in connection with the covered goods, to cause confusion, or to cause mistake, or to deceive under Section 2(d) of the Lanham Act, as amended, 15 U.S.C. §1052(d).

112.   Emerson Electric believes that it is and will be damaged by the '893 Registration.

## PRAYER FOR RELIEF

WHEREFORE, Emerson Electric respectfully demands judgment:

(1)     That Defendants and their subsidiaries, parent(s), related companies, officers, agents, servants, employees, warehousemen, warehousers, distributors, attorneys, successors and assignees, and all persons in active concert or participation with any of them, be temporarily, preliminarily, and permanently enjoined and restrained from:

(a)     Imitating, copying or making unauthorized use of the EMERSON Marks, the Emerson trade name or domain name either standing alone or as part of any other name or mark;

(b)     Using "Emerson" or any reproduction, counterfeit, copy, colorable imitation thereof, or any words confusingly similar, as a trademark, trade name, domain name or otherwise in connection with the advertising, display, sale, offering for sale or distribution of any products in any medium, including but not limited to sales on the Internet, in such a manner that is likely to cause confusion or mistake or to deceive customers or the public or give the impression that Defendants or their products or services originate with, are affiliated with, are sponsored by, approved by or in any way connected to Emerson Electric;

(c)     Using "Emerson Quiet Kool" or any variation thereof as a name or mark;

(d)     Using any name, mark or false designation of origin, or false description, or performing any act which can, or is likely to, lead members of the public to believe that any service or product

26

provided by Defendants is in any manner associated or connected with Emerson Electric or is sold, licensed, sponsored, approved or authorized by Emerson Electric;

(e)     Using "Emerson" or "Emerson Quiet Kool" as a metatag or in any hidden data, including but not limited to, in conjunction with any internet searching tool;

(f)     Using the name "emerson" or "emersonquietkool" alone or in combination with any other words or letter, as a domain name on the Internet;

(g)     Engaging in any activity constituting unfair competition with Emerson Electric, or constituting an infringement of Emerson Electric's trademarks or trade name;

(h)     Registering or applying to register as a trademark, service mark, trade name, Internet domain name or any other source identifier or symbol of origin "Emerson Quiet Kool" or any other mark or name that infringes on or is likely to be confused with Emerson Electric's trademarks or trade name;

(i)     Passing off, inducing, or enabling others to sell or pass off any products that do not emanate from Emerson Electric or that are not distributed under the control and supervision of Emerson Electric and approved by Emerson Electric for sale under the EMERSON Marks, as products distributed by or with the approval of Emerson Electric;

27

  (j)  Falsely advertising any product as Emerson Electric products that do not emanate from Emerson Electric or that are not distributed under the control and supervision of Emerson Electric and approved by Emerson Electric for sale under the EMERSON Marks;

  (k)  Committing any act calculated to cause purchasers to believe falsely that the Emerson Quiet Kool Goods are those sold under the control and supervision, were sponsored, approved or connected with or guaranteed, or produced under the control and supervision of Emerson Electric;

  (l)  Shipping, importing, delivering, distributing, returning, or otherwise disposing of in any manner products or inventory bearing the EMERSON Marks without authorization by Emerson Electric; and

  (m)  Further infringing the EMERSON Marks and damaging Emerson Electric's goodwill and business reputation.

 (2) For injunctive relief canceling the registration to Defendants of the Infringing Domain Name, and transferring the Infringing Domain Name to Emerson Electric;

 (3) That Defendants be required to recall from all retailers, distributors and wholesalers, all products, packaging, promotional, and advertising material of any kind bearing the name EMERSON and any/or other colorable imitation of the EMERSON Marks.

(4)     That Defendants be required to account for all inventories or merchandise and other materials bearing the EMERSON Marks or any marks confusingly similar to the EMERSON Marks and that they be required to destroy that inventory or provide it to Emerson Electric.

(5)     That Defendants be required to supply Emerson Electric with a complete list of persons and entities from whom they purchased, and to whom they distributed and/or sold, products bearing the EMERSON mark.

(6)     That Defendants, within 30 days after service of judgment, with notice of entry thereof upon them, be required to file with the Court and serve upon Emerson Electric a written report under oath setting forth in detail the manner in which each has complied with paragraphs 1 through 5, above.

(7)     That Defendants be required to make an accounting of all profits, gains, and advantages that they have derived as a result of their unlawful conduct.

(8)     That Defendants be required to pay to Emerson Electric, in accordance with 15 U.S.C. § 1117(a) and (b), R.S.Mo. § 417.061, and all other applicable state laws, such damages as Emerson Electric has suffered as a consequence of Defendants' infringement of the EMERSON Marks and from the above-described acts of misrepresentation, unfair competition, false designation, false advertising and unfair trade practices, including the following:

(a)     Three times all gains and profits derived by Defendants from the above described acts of misrepresentation, trademark infringement, unfair competition, false advertising, and unfair trade practices, or,

in the alternative, three times Emerson Electric's lost profits, whichever is greater; and

(b)     All costs and attorneys' fees and costs incurred in this action including an award of treble damages as applicable.

(9)     Issue an Order directing the Commissioner of Trademarks to cancel United States Trademark Registration No. 4,688,893.

(10)     That Emerson Electric have such other and further relief as the Court deems just and proper in the circumstances.

## JURY DEMAND

Emerson Electric demands a trial by jury of all issues triable as of right by a jury in this action.

Respectfully submitted,

HARNESS, DICKEY & PIERCE, P.L.C.

Date:  August 25, 2017          By:     _____
                                        Joel R. Samuels, Bar No. 63587MO
                                        7700 Bonhomme, Suite 400
                                        Clayton, Missouri 63105
                                        (314) 726-7500 – phone
                                        (314) 726-7501 – fax

                                        Michael P. Brennan, Of Counsel
                                        George D. Moustakas, Of Counsel
                                        Lisa M. DuRoss, Of Counsel
                                        5445 Corporate Drive, Suite 400
                                        Troy, Michigan  48098
                                        (248) 641-1600 – phone
                                        (248) 641-0270 – fax

                                        Attorneys for Plaintiff Emerson Electric Co.

30

22009397.1